Our fourth argument of the morning is in Appeal No. 25-2786, Bowei Xi v. Trustees of Purdue University. Appeal No. 25-2786, Bowei Xi v. Trustees of Purdue University Okay, Mr. Dowers, nice to see you. Good to see you, Your Honor. May it please the Court, This appeal can be resolved quite narrowly. My client, Dr. Xi, seeks reversal on the preserved Title VII sex discrimination promotion claim. The Court need not reverse on retaliation, race, national origin, or any broader theory to remand this case for trial. We are not asking this Court to decide whether Dr. Xi should have been promoted. We are not asking the Court to re-rank scholars. The question is whether Purdue, as the summary judgment movement, was entitled to judgment as a matter of law when the record viewed in Dr. Xi's favor would allow a reasonable jury to find that Purdue's stated explanation was not honestly held and that sex was a motivating factor. Purdue was the movement below, and Dr. Xi was the non-movement, so the record's inferences must be viewed in her favor. Purdue's appellee brief says reasonable inferences run in favor of the appellee, which has been subsequently revised. Under Ortiz and Joel evidence must be considered as a whole. The District Court's error was treating the research refresh award as it claimed was central to the case. As being dispositive because the area committee's final vote was centered around the research refresh award, and Judge Simon provided that plaintiff did not provide sufficient evidence to show that the area committee had knowledge of the reasoning or rationale behind the research refresh award. Dr. Xi's reasoning behind seeking the research refresh award was due to her pregnancy-related complications and caregiving responsibilities that arose from her childbearing. Dr. Xi's promotion process resulted in a unanimous vote at the primary committee, which is her department level, which is most familiar with her work, and then she was denied promotion on a 10-11 vote at the area committee, a single vote that was dispositive to her promotion to full professorship. She's already a tenured professor, and in seeking full professor status comes with certain privileges for the professor, such as an increase in pay and other benefits of the role. Now when we look at our comparator evidence that was provided here, I want to state again that we're not here seeking the court to go through and determine whether or not Badra or my client was more qualified than the other. We're merely providing Badra as a comparator to also show the university's treatment of other professors in comparison to her as far as the promotion process and its flexible nature as indicated by the record was administered. Dr. Badra was able to accelerate his promotion process. Granted, as Judge Simon showed in the district court order, he found that because Dr. Badra had another offer from a competing university, that that was sufficient to show that the university had a right to perhaps accelerate his promotion process. But in that was statements related to circumnavigating certain procedures as defined by the university, which included essentially helping him receive certain awards to bolster his promotion package. And interestingly, in the same promotion cycle at the primary committee, Dr. Badra's vote was 9-5 to push him through, and his final vote was 20-0 at the area committee to approve his promotion. I thought Judge Simon said it's not a great comparison as well because Dr. Badra did not receive the Research Refresh Award. And then in addition, his publication track, at least in recent years, was quite different than Professor Shih's. Am I right about that? That is true, Your Honor. So the Research Refresh Award was brought up in that context as a negative for my client. Part of the rationale that was explained to my client in this January 18th meeting was that she did not have enough competitive grant funding. It was construed as his continuing funding or as the university stated in its brief. Was that the meeting with Dean Flesch and the department head? That is correct, Your Honor. Okay. Is there? I've seen some references. I think they're in the briefs too. Your client recorded the meeting? This was a recording, Your Honor. Okay. Where can we find the recording? Where is it at in the district court record? It provided an opportunity to supplement what we could provide. Well, hold on. Is it part of the district court record? The recording itself is not. My client attested to what was discussed at the district court in that meeting. Okay. But it's not? All right. Well, yeah. If it's not in the district court record. Correct. It's not there? Correct. Okay. So from that point, my client's academic tenure is she's been exceptional. She's a nationally renowned professor. She is excelling in her role at the university and has been excelling at her role in the university. And as far as we see it, my client is trying to narrow the matter here to a few issues, including the interpretation of this Research Refresh Award, as the university has previously applied this award as a competitive grant. Now, the nature of the grant is there to help faculty and to serve as protected time for faculty. And she applied for this on the back of COVID, as I previously stated, in connection with her child-rearing duties and her pregnancy-related complications. But she quickly maintained her research grant funding. And admittedly, as far as funding is concerned, at the time of her promotion, there was an active grant that the university said should have been more carefully articulated in her promotion package. But the active funding was still there and scheduled to be valid or usable by my client soon after the promotion would have gone through. That said, we're in the position where family obligations serve as evidence here. And Dr. Shi swore in declaration, she says that she sought the award because caregiving responsibilities related to her high-risk pregnancy and premature birth and the COVID-era child care. She also declared that Purdue officials later told her the award had been interpreted as a sign that she was less productive because of family obligations. And Purdue disputes that inference. But that is exactly why summary judgment was improper. We're here trying to say that the facts that the court weighed are worthy of a jury to make a determination on these facts. But I will reserve the remainder of my time if you have no further questions. Yeah, you're welcome to. Okay, thank you, Mr. Dowers. Mr. Maley, nice to see you. Thank you. John Maley on behalf of Purdue University. In what is respectfully a fairly straightforward and simple case where a fine faculty member who has previously sought and attained tenure is now seeking full promotion, higher compensation and some additional rights. Judge Simon carefully reviewed the matter, interpreted the facts favorably for the non-movement, issued a 30-page ruling. I appreciate Learned Counsel's narrowing even today that apparently retaliation is no longer before the court, no longer race or national origin, and so we're limited now to a sex discrimination claim. By the way, there's no due process or other types of claims or issues that we see sometimes in faculty cases. I'll start off noting what Judge Simon, how he approached this case, addressing post-Ortiz whether a reasonable fact finder could conclude that the employer engaged in adverse employment action based on protective status, here sex. He focused on the first university decision on tenure promotions being particularly challenging for federal courts to go in and try to determine is there error here, is there actual discrimination? And the layering of this shows that, that you first have within the College of Science at Purdue, you have multiple departments including statistics. Not surprisingly, the departments get the first pass on this and departments, not surprisingly, tend to favor those in their ranks. Then it goes to the College of Science which has now 21 total members of which three happen to be from that department. At the, as has occurred previously, and she sought full professor in 2018, it was denied. She admits that was not discriminatory. She applied in 2020 and then withdrew. And in 2022 when she applied, she received an 11 to 10 negative vote from the area committee which was then affirmed by the college chair. She exercised her right to seek reconsideration from the vice provost. That very deferential standard review for improper standards, he concluded after careful review, no improprieties there. So we're left with, as Judge Simon zeroed in and to Judge Scudder, your questions on the Research Refresh Award. By its very name and by the policy that Purdue, when they pronounced that, that is to help invigorate and restore someone who needs that. And the record is undisputed that in the 2018 to 2022 time period, three faculty at Purdue sought full promotion, including the plaintiff here who had received the research, that particular research refresh award. And none of those made it to full promotion. Much like in our profession, if a colleague needs, let's say, legal writing refresh and enhancement to invigorate their writing, that's an improvement process. It's not an honorary stand alone. It's by its very nature, the policy is to get back to let's invigorate so that you can be on track. Judge Simon very carefully analyzed the undisputed facts that the one comparator identified, Dr. Baudra, that one was not in the Research Refresh Award, so not similarly situated. Two had NSF and NIH funding, and I won't profess to be an expert on what funding really matters, but the primary committee explained that the funding was very important, and the plaintiff here only had the Army funding that was expiring in 2024. Strong publication history in Tier 1 journals, and an offer from a competing, well-regarded university, North Carolina State, that he appropriately leveraged in that context and received a 21-0 vote in favor. So there's no evidence anywhere in there of sex discrimination. The area committee only knew that she had received the Refresh Research Award, not what the underlying reasons for seeking that award. That's undisputed. So at the end of the day, and it's just a challenging case for my colleagues, where they've taken on a case, conducted discovery, and find no evidence of sex discrimination because none exist. This is one of those situations where the university, through its policies, carefully considered this matter and determined that this particular applicant is not yet ready. Hopefully, she will be in the future. Purdue wants all of its faculty to succeed. She was accorded tenure, but she's not yet to the full professor role that, per the primary area committee, is determined. You can reapply, right? Absolutely, and had in 2024, it's undisputed. The record doesn't speak to what the status of that was. Plaintiff's counsel has knowledge of that. I do not. But yes, as she has previously applied and reapplied several times. By the way, on that point, Your Honor, there in the briefing was assertion that, well, she was dissuaded or told not to reapply, and that goes to the retaliation, which is no longer in play, apparently. No, that was wise guidance and counsel from her peers, including from her department, that your letters of reference by policy last for 24 months. They cannot be replaced, and her references were deemed not to be stellar, and so that she was advised, wait, refresh, improve your portfolio so that she'd have a better shot. With that, Your Honor, the material facts are undisputed. The law is in Purdue's favor. Judge Simon very carefully and very thoroughly gave this very full attention, and the decision below should be affirmed. Thank you, Mr. Maley. Thank you. Mr. Dowers, you're welcome to use your remaining time. Thank you, Your Honors. May it please the Court. This isn't just mere academic disagreement. We accept Purdue's right to make academic judgments. The issue is not academic correctness. It is whether the explanation for her not being promoted was honestly held and whether sex affected the decision. And Blasio cautions against re-ranking scholars. It does not exempt universities from Title VII. The contention that the Area Committee did not review the research refresh award application, which provides the rationale and reasonings for my client to seek such an award, that rationale, we're narrowing the inference, but it does not eliminate it. Dr. Zai's evidence is not that every anonymous voter read the research refresh award application. It is that Purdue officials later conveyed that the research refresh award was interpreted through family obligations and reduced productivity assumptions, and Purdue's own materials and endorsements tie the award to family disruption context. Provided that my client is an exceptional professor, and she has been quite esteemed, and we move here to have the Court reverse on the Title VII discrimination. Thank you. Very well, Mr. Dowers. Thanks to you and your colleague, Mr. Maley, you as well, your colleague, and we will take this appeal under advisement. Thank you.